ORIGINAL



1  LERACH COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP
2  JOHN K. GRANT (169813)
   SHAWN A. WILLIAMS (213113)
3  MONIQUE C. WINKLER (213031)
   AELISH M. BAIG (201279)
4  100 Pine Street, Suite 2600
   San Francisco, CA  94111
5  Telephone: 415/288-4545
   415/288-4534 (fax)
6  johng@lerachlaw.com
   shawnw@lerachlaw.com
7  mwinkler@lerachlaw.com
   abaig@lerachlaw.com
8
   Attorneys for Plaintiff
9
   [Additional counsel appear on signature page.]
10
                   UNITED STATES DISTRICT COURT
11
                   NORTHERN DISTRICT OF CALIFORNIA
12
                          OAKLAND DIVISION
13
   SAMMY K. DOOLITTLE, Derivatively on   )   No.
14 Behalf of SONIC SOLUTIONS,            )
                                         )   VERIFIED SHAREHOLDER DERIVATIVE
15                Plaintiff,             )   COMPLAINT FOR VIOLATION OF THE
                                         )   FEDERAL SECURITIES LAWS AND
16      vs.                              )   STATE LAW CLAIMS FOR BREACH OF
                                         )   FIDUCIARY DUTY, ABUSE OF
17 ROBERT J. DORIS, DAVID C. HABIGER,    )   CONTROL, CONSTRUCTIVE FRAUD,
   MARY C. SAUER, A. CLAY LEIGHTON,      )   CORPORATE WASTE, UNJUST
18 MARK ELY, ROBERT M. GREBER, PETER )     ENRICHMENT, GROSS
   J. MARGUGLIO and R. WARREN            )   MISMANAGEMENT AND ACTION FOR
19 LANGLEY,                              )   ACCOUNTING
                                         )
20                Defendants,            )
                                         )
21      – and –                          )
                                         )
22 SONIC SOLUTIONS, a California         )
   corporation,                          )
23                                       )
                  Nominal Defendant.     )
24 _____)   DEMAND FOR JURY TRIAL

25

26

27

28

1

**NATURE OF THE ACTION**

2    1.    This is a shareholder derivative action brought by a shareholder of Sonic Solutions
3  ("Sonic" or the "Company") on behalf of the Company against its entire Board of Directors and
4  certain current officers and former top officers and/or directors (collectively, "Defendants"). This
5  action seeks to remedy Defendants' violations of federal and state law, including breaches of
6  fiduciary duty, abuse of control, constructive fraud, corporate waste, unjust enrichment and gross
7  mismanagement, arising out of a scheme and wrongful course of business whereby Defendants
8  allowed senior Sonic insiders to divert hundreds of millions of dollars of corporate assets to
9  themselves via the manipulation of grant dates associated with hundreds of thousands of stock
10  options granted to Sonic insiders. Each of the Defendants also participated in the concealment of the
11  backdating option scheme complained of herein and/or refused to take advantage of the Company's
12  legal rights to require these senior insiders to disgorge the hundreds of millions in illicitly obtained
13  incentive compensation and proceeds diverted to them since 2001.

14    2.    Between 2001 and 2006, Defendants also caused Sonic to file false and misleading
15  statements with the Securities and Exchange Commission ("SEC"), including Proxy Statements filed
16  with the SEC which stated that the options granted by Sonic carried with them an exercise price that
17  was not less than the fair market value of Sonic stock on the date of grant and issuance.

18    3.    In fact, Defendants were aware that the practices employed by the Board allowed the
19  stock option grants to be backdated to dates when the Company's shares were trading at or near the
20  lowest price for that relevant period. By the beginning of February 2007, Defendants' backdating
21  scheme had yielded stock option grants to the Company's executive officers worth millions of
22  dollars, contributing to their ability to sell $43 million worth of their Sonic stock.

23    4.    Sonic's financial results as reported and filed with the SEC were false. Defendants'
24  misrepresentations and wrongful course of conduct violated the Securities Exchange Act of 1934
25  (the "Exchange Act"), as well as California law. By authorizing and/or acquiescing in the stock
26  option backdating scheme, Defendants: (i) caused Sonic to issue false statements; (ii) diverted
27  hundreds of millions of dollars of corporate assets to senior Sonic executives; and (iii) subjected
28  Sonic to potential liability from regulators, including the SEC and the IRS.

1          5.      Defendants' gross mismanagement and malfeasance over the past decade has exposed

2    Sonic and its senior executives to criminal and civil liability for issuing false and misleading

3    financial statements.  Specifically, Defendants caused or allowed Sonic to issue statements that

4    failed to disclose or misstated the following: (i) that the Company had problems with its internal

5    controls that prevented it from issuing accurate financial reports and projections; (ii) that because of

6    improperly recorded stock-based compensation expenses, the Company's financial results violated

7    Generally Accepted Accounting Principles ("GAAP"); and (iii) that the Company's public

8    disclosures presented an inflated view of Sonic's earnings and earnings per share.

9          6.      Defendants' malfeasance and mismanagement during the relevant period has wreaked

10   hundreds of millions of dollars of damages on Sonic.  The Company's senior executives were

11   incentivized to over-pay themselves, to profit from their misconduct by cashing in on under-priced

12   stock options and to issue false financial statements to cover up their misdeeds.  Defendants'

13   breaches of fiduciary duties in the administration of the Company's stock option plans so polluted

14   the plans with grant date manipulations as to void all grants made pursuant to the plans.  This action

15   seeks recovery for Sonic against these faithless fiduciaries, as Sonic's Board of Directors, as

16   currently composed, is simply unable or unwilling to do so.

17                           **INTRADISTRICT ASSIGNMENT**

18         7.      A substantial part of the events or omissions which give rise to the claims in this

19   action occurred in the county of Marin and as such this action is properly assigned to the San

20   Francisco or Oakland division of this Court.

21                              **JURISDICTION AND VENUE**

22         8.      The claims asserted herein arise under §14(a) of the Exchange Act, 15 U.S.C.

23   §78n(a), and under California law for breach of fiduciary duty, abuse of control, constructive fraud,

24   corporate waste, unjust enrichment and gross mismanagement.  In connection with the acts, conduct

25   and other wrongs complained of herein, Defendants, directly or indirectly, used the means and

26   instrumentalities of interstate commerce, the United States mail and the facilities of a national

27   securities market.

28

1    9.    This Court has subject matter jurisdiction pursuant to §27 of the Exchange Act, 15
2  U.S.C. §78aa, as well as 28 U.S.C. §1331. This Court also has supplemental jurisdiction over the
3  state law claims asserted herein pursuant to 28 U.S.C. §1367.

4    10.    This action is not a collusive one to confer jurisdiction on a court of the United States
5  which it would not otherwise have.

6    11.    Venue is proper in this district pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa,
7  as well as 28 U.S.C. §1391(b). Many of the acts charged herein, including the preparation and
8  dissemination of materially false and misleading information, occurred in substantial part in this
9  District. Sonic is located in and conducts its business in this District. Further, Defendants conduct
10  business in this District, and certain of the Defendants are citizens of California and reside in this
11  District.

12                                    **PARTIES**

13    12.    Plaintiff Sammy K. Doolittle is a shareholder of Sonic and holds and has continually
14  held 500 shares of Sonic stock since November 4, 1998.

15    13.    Nominal party Sonic is a California corporation with its principal executive offices
16  located at 101 Rowland Way, Suite 110, Novato, California. Sonic develops and markets computer
17  software related to digital media, such as data, photographs, audio and video in digital formats.

18    14.    Defendant David C. Habiger ("Habiger") has served as President and Chief Operating
19  Officer ("COO") of Sonic since April 2005 and additionally as Chief Executive Officer ("CEO") of
20  the Company since September 2005. Habiger joined the Company in 1993 and served in a variety of
21  sales and management positions until his promotion in April 2005. Because of Habiger's positions,
22  he knew the adverse non-public information about the business of Sonic, as well as its finances,
23  markets and present and future business prospects, via access to internal corporate documents,
24  conversations and connections with other corporate officers and employees, attendance at
25  management meetings and via reports and other information provided to him in connection
26  therewith. During the relevant period, Habiger participated in the issuance of false and misleading
27  statements, including the preparation of the false and/or misleading press releases and SEC filings.

28

1       15.    Defendant Robert J. Doris ("Doris") co-founded Sonic in 1986 and has served as the

2  Company's Chairman of the Board and a director since its inception. Doris additionally served as

3  the Company's President from its inception until April 2005, and its CEO from the Company's

4  inception until September 2005. Because of Doris's positions, he knew the adverse non-public

5

6  information about the business of Sonic, as well as its finances, markets and present and future

7  business prospects, via access to internal corporate documents, conversations and connections with

8  other corporate officers and employees, attendance at management and Board meetings and

9  committees thereof and via reports and other information provided to him in connection therewith.

10  During the relevant period, Doris participated in the issuance of false and misleading statements,

11  including the preparation of the false and/or misleading press releases and SEC filings. Based on his

12

13  knowledge of material non-public information regarding the Company, defendant Doris violated Cal.

14  Corp. Code §§25402 and 25502.5 by selling 1.03 million shares of Sonic stock for proceeds of over

15  $17.6 million during the relevant period.

16       16.    Defendant A. Clay Leighton ("Leighton") has served as Chief Financial Officer

17  ("CFO") of Sonic since January 1999, and additionally as Executive Vice President since September

18  2006. Leighton joined the Company in 1993 as Vice President, Finance and was named Senior Vice

19  President, Worldwide Sales and Finance from January 1999 until September 2006. Because of

20  Leighton's positions, he knew the adverse non-public information about the business of Sonic, as

21  well as its finances, markets and present and future business prospects, via access to internal

22  corporate documents, conversations and connections with other corporate officers and employees,

23  attendance at management meetings and via reports and other information provided to him in

24  connection therewith. Defendant Leighton, by his specialized financial expertise, was in a unique

25  position to understand the business of Sonic, as well as its finances, markets and present and future

26  business prospects. During the relevant period, Leighton participated in the issuance of false and/or

27  misleading statements, including the preparation of the false and/or misleading press releases and

28  SEC filings. Based on his knowledge of material non-public information regarding the Company,

1  defendant Leighton violated Cal. Corp. Code §§25402 and 25502.5 by selling 341,000 shares of

2  Sonic stock for proceeds of over $5.2 million during the relevant period.

3      17.    Defendant Mary C. Sauer ("Sauer") co-founded Sonic in 1986 and has served as a

4  director and Secretary since its inception. Sauer additionally served as Vice President of the

5  Company from 1986 to September 2005 and as Senior Vice President, Marketing and Sales from

6  February 1993 to September 2005. Because of Sauer's positions, she knew the adverse non-public

7  information about the business of Sonic, as well as its finances, markets and present and future

8  business prospects, via access to internal corporate documents, conversations and connections with

9  other corporate officers and employees, attendance at management and Board meetings and

10 committees thereof and via reports and other information provided to her in connection therewith.

11 During the relevant period, Sauer participated in the issuance of false and/or misleading statements,

12 including the preparation of the false and/or misleading press releases and SEC filings. Based on her

13 knowledge of material non-public information regarding the Company, defendant Sauer violated

14 Cal. Corp. Code §§25402 and 25502.5 by selling 1.03 million shares of Sonic stock for proceeds of

15 $17.6 million during the relevant period.

16     18.    Defendant Mark Ely ("Ely") has served as Executive Vice President, Strategy of

17 Sonic since September 2006. Ely joined the Company in 1992, serving in various management roles

18 until his promotion to his current position in 2006. Because of Ely's positions, he knew the adverse

19 non-public information about the business of Sonic, as well as its finances, markets and present and

20 future business prospects, via access to internal corporate documents, conversations and connections

21 with other corporate officers and employees, attendance at management meetings and via reports and

22 other information provided to him in connection therewith. During the relevant period, Ely

23 participated in the issuance of false and/or misleading statements, including the preparation of the

24 false and/or misleading press releases and SEC filings. Based on his knowledge of material non-

25 public information regarding the Company, defendant Ely violated Cal. Corp. Code §§25402 and

26 25502.5 by selling 28,071 shares of Sonic stock for proceeds of $428,083 during the relevant period.

27     19.    Defendant Robert M. Greber ("Greber") has been a director of Sonic since August

28 1993. Because of Greber's position, he knew the adverse non-public information about the business

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS        - 5 -

1 of Sonic, as well as its finances, markets and present and future business prospects, via access to
2 internal corporate documents, conversations and connections with other corporate officers and
3 employees, attendance at Board meetings and committees thereof and via reports and other
4 information provided to him in connection therewith. As a member (Chair) of the Audit Committee,
5 defendant Greber caused or allowed the dissemination of the improper public statements described
6 herein. Defendant Greber qualifies as the committee financial expert. During the relevant period,
7 Greber participated in the issuance of false and/or misleading statements, including the preparation
8 of the false and/or misleading press releases and SEC filings. Based on his knowledge of material
9 non-public information regarding the Company, defendant Greber violated Cal. Corp. Code §§25402
10 and 25502.5 by selling 87,500 shares of Sonic stock for proceeds of $1.1 million during the relevant
11 period.

12      20.    Defendant Peter J. Marguglio ("Marguglio") has been a director of Sonic since
13 August 1986. Because of Marguglio's position, he knew the adverse non-public information about
14 the business of Sonic, as well as its finances, markets and present and future business prospects, via
15 access to internal corporate documents, conversations and connections with other corporate officers
16 and employees, attendance at Board meetings and committees thereof and via reports and other
17 information provided to him in connection therewith. As a member of the Audit Committee,
18 defendant Marguglio caused or allowed the dissemination of the improper public statements
19 described herein. During the relevant period, Marguglio participated in the issuance of false and/or
20 misleading statements, including the preparation of the false and/or misleading press releases and
21 SEC filings. Based on his knowledge of material non-public information regarding the Company,
22 defendant Marguglio violated Cal. Corp. Code §§25402 and 25502.5 by selling 20,000 shares of
23 Sonic stock for proceeds of $254,630 during the relevant period.

24      21.    Defendant R. Warren Langley ("Langley") has been a director of Sonic since June
25 2001. Because of Langley's position, he knew the adverse non-public information about the
26 business of Sonic, as well as its finances, markets and present and future business prospects, via
27 access to internal corporate documents, conversations and connections with other corporate officers
28 and employees, attendance at Board meetings and committees thereof and via reports and other

1  information provided to him in connection therewith.  As a member of the Audit Committee,
2  defendant Langley caused or allowed the dissemination of the improper public statements described
3  herein.  During the relevant period, Langley participated in the issuance of false and/or misleading
4  statements, including the preparation of the false and/or misleading press releases and SEC filings.
5  Based on his knowledge of material non-public information regarding the Company, defendant
6  Langley violated Cal. Corp. Code §§25402 and 25502.5 by selling 38,000 shares of Sonic stock for
7  proceeds of $696,462 during the relevant period.

8      22.    The defendants identified in ¶¶15, 17 and 19-21 are referred to herein as the "Director
9  Defendants."  The defendants identified in ¶¶14 and 16-18 are referred to herein as the "Officer
10  Defendants."  The defendants identified in ¶¶15-21 are referred to herein as the "Insider Selling
11  Defendants."

12                          **DEFENDANTS' DUTIES**

13      23.    Each officer and director of Sonic named herein owed the Company and Sonic
14  shareholders the duty to exercise a high degree of care, loyalty and diligence in the management and
15  administration of the affairs of the Company, as well as in the use and preservation of its property
16  and assets.  The conduct of Sonic's directors and officers complained of herein involves knowing,
17  intentional and culpable violations of their obligations as officers and directors of Sonic.  Further, the
18  misconduct of Sonic's officers has been ratified by Sonic's Board, which has failed to take any legal
19  action on behalf of the Company against them.

20      24.    By reason of their positions as officers, directors and fiduciaries of Sonic and because
21  of their ability to control the business and corporate affairs of the Company, the Defendants owed
22  Sonic and its shareholders fiduciary obligations of candor, trust, loyalty and care, and were required
23  to use their ability to control and manage Sonic in a fair, just, honest and equitable manner, and to
24  act in furtherance of the best interests of Sonic and its shareholders so as to benefit all shareholders
25  equally and not in furtherance of their personal interest or benefit.  In addition, as officers and/or
26  directors of a publicly held company, the Defendants had a duty to refrain from utilizing their control
27  over Sonic to divert assets to themselves via improper and/or unlawful practices.  Defendants also
28

1  had a duty to promptly disseminate accurate and truthful information with respect to the Company's
2  operations, earnings and compensation practices.

3      25.     Because of their positions of control and authority as directors or officers of Sonic,
4  each of the Defendants was able to and did, directly and indirectly, control the wrongful acts
5  complained of herein. As to the Director Defendants, these acts include: (i) agreement to and/or
6  acquiescence in Defendants' option backdating scheme; and (ii) willingness to cause Sonic to
7  disseminate false Proxy Statements for 2001-2005, which Proxy Statements failed to disclose
8  Defendants' option backdating scheme and omitted the fact that executive officers were allowed to
9  backdate their stock option grants in order to manipulate the strike price of the stock options they
10 received. Because of their positions with Sonic, each of the Defendants was aware of these wrongful
11 acts, had access to adverse non-public information and was required to disclose these facts promptly
12 and accurately to Sonic shareholders and the financial markets but failed to do so.

13     26.     Between 2001 and 2005, Defendants repeated in each Proxy Statement that the stock
14 option grants made during that period carried an exercise price that was *not less than* the fair market
15 value of Sonic stock on the date granted, as calculated by the public trading price of the stock at the
16 market's close on that date. However, Defendants concealed until the beginning of February 2007
17 that the stock option grants were repeatedly and consciously *backdated* to ensure that the strike price
18 associated with the option grants was at or near the lowest trading price for that fiscal period. Due to
19 Defendants' breach of their fiduciary duty in the administration of the stock option plans, plaintiff
20 seeks to have the directors' and officers' plans voided and gains from those plans returned to the
21 Company. In the alternative, plaintiff seeks to have all of the unexercised options granted to
22 Defendants between 2001 and 2005 cancelled, the financial gains obtained via the exercise of such
23 options returned to the Company and to have Defendants revise the Company's financial statements
24 to reflect the truth concerning these option grants.

25     27.     To discharge their duties, the directors of Sonic were required to exercise reasonable
26 and prudent supervision over the management, policies, practices and controls of the business and
27 financial affairs of Sonic. By virtue of such duties, the officers and directors of Sonic were required,
28 among other things, to:

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS       - 8 -

1          (a)    manage, conduct, supervise and direct the business affairs of Sonic in

2    accordance with all applicable law (including federal and state laws, government rules and

3    regulations and the charter and bylaws of Sonic);

4          (b)    neither engage in self-dealing nor knowingly permit any officer, director or

5    employee of Sonic to engage in self-dealing;

6          (c)    neither violate nor knowingly permit any officer, director or employee of

7    Sonic to violate applicable laws, rules and regulations;

8          (d)    remain informed as to the status of Sonic's operations, including its practices

9    in relation to the cost of allowing the pervasive backdating and improperly accounting for such, and

10    upon receipt of notice or information of imprudent or unsound practices, to make a reasonable

11    inquiry in connection therewith, and to take steps to correct such conditions or practices and make

12    such disclosures as are necessary to comply with the U.S. federal securities laws and their duty of

13    candor to the Company's shareholders;

14          (e)    prudently protect the Company's assets, including taking all necessary steps to

15    recover corporate assets (cash, stock options) improperly paid to Company executives and directors

16    together with the related costs (professional fees) proximately caused by the illegal conduct

17    described herein;

18          (f)    establish and maintain systematic and accurate records and reports of the

19    business and affairs of Sonic and procedures for the reporting of the business and affairs to the Board

20    of Directors and to periodically investigate, or cause independent investigation to be made of, said

21    reports and records;

22          (g)    maintain and implement an adequate, functioning system of internal legal,

23    financial and accounting controls, such that Sonic's financial statements – including its expenses,

24    accounting for stock option grants and other financial information – would be accurate and the

25    actions of its directors would be in accordance with all applicable laws;

26          (h)    exercise control and supervision over the public statements to the securities

27    markets and trading in Sonic stock by the officers and employees of Sonic; and

28

1          (i)     supervise the preparation and filing of any financial reports or other

2 information required by law from Sonic and to examine and evaluate any reports of examinations,

3 audits or other financial information concerning the financial affairs of Sonic and to make full and

4 accurate disclosure of all material facts concerning, *inter alia*, each of the subjects and duties set

5 forth above.

6      28.    Each Defendant, by virtue of his or her position as a director and/or officer, owed to

7 the Company and to its shareholders the fiduciary duties of loyalty, good faith and the exercise of

8 due care and diligence in the management and administration of the affairs of the Company, as well

9 as in the use and preservation of its property and assets. The conduct of the Defendants complained

10 of herein involves a knowing and culpable violation of their obligations as directors and/or officers

11 of Sonic, the absence of good faith on their part, and a reckless disregard for their duties to the

12 Company and its shareholders, which Defendants were aware or should have been aware posed a

13 risk of serious injury to the Company. The conduct of the Defendants who were also officers and/or

14 directors of the Company during the relevant period has been ratified by the Director Defendants

15 who comprised Sonic's entire Board during the relevant period.

16      29.    Defendants breached their duties of loyalty and good faith by allowing or by

17 themselves causing the Company to misrepresent its financial results and prospects, as detailed

18 herein *infra*, and by failing to prevent the Defendants from taking such illegal actions. As a result,

19 Sonic has expended and will continue to expend significant sums of money. Such expenditures

20 include, but are not limited to:

21          (a)    improvidently paid executive compensation;

22          (b)    increased capital costs as a result of the loss of market capitalization and the

23 Company's damaged reputation in the investment community;

24          (c)    costs incurred to carry out internal investigations, including legal fees paid to

25 outside counsel; and

26          (d)    incurring possible IRS penalties for improperly reporting compensation.

27      30.    These actions have irreparably damaged Sonic's corporate image and goodwill. For

28 at least the foreseeable future, Sonic will suffer from what is known as the "liar's discount," a term

1  applied to the stocks of companies who have been implicated in illegal behavior and have misled the

2  investing public, such that Sonic's ability to raise equity capital or debt on favorable terms in the

3  future is now impaired.

4  ## AIDING AND ABETTING AND CONCERTED ACTION

5    31.    In committing the wrongful acts alleged herein, Defendants have pursued or joined in

6  the pursuit of a common course of conduct, and have acted in concert with one another in

7  furtherance of their common plan or design. In addition to the wrongful conduct herein alleged as

8  giving rise to primary liability, Defendants further aided and abetted and/or assisted each other in

9  breach of their respective duties.

10    32.    At relevant times, Defendants collectively and individually initiated a course of

11  conduct which was designed to and did: (i) conceal the fact that the Company was over-paying its

12  directors, officers and employees and improperly misrepresenting its financial results, in order to

13  allow Defendants to artificially inflate the price of the Company's shares; (ii) maintain Defendants'

14  executive and directorial positions at Sonic and the profits, power and prestige which Defendants

15  enjoyed as a result of these positions; and (iii) deceive the investing public, including shareholders of

16  Sonic, regarding Defendants' management of Sonic's operations, the Company's financial health

17  and stability, and future business prospects, which had been misrepresented by Defendants

18  throughout the relevant period. In furtherance of this course of conduct, Defendants collectively and

19  individually took the actions set forth herein.

20    33.    Defendants engaged in a common course of conduct commencing by at least 2001

21  and continuing thereafter. During this time, Defendants caused the Company to conceal the true fact

22  that Sonic was over-compensating its directors, officers and employees and misrepresenting its

23  financial results. In addition, Defendants also made other specific, false statements about Sonic's

24  financial performance and future business prospects, as alleged herein.

25    34.    The purpose and effect of Defendants' common enterprise and/or common course of

26  conduct was, among other things, to disguise Defendants' violations of law, breaches of fiduciary

27  duty, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment; to

28  conceal adverse information concerning the Company's operations, financial condition, and future

1  business prospects; and to artificially inflate the price of Sonic common stock so they could protect
2  and enhance their executive and directorial positions and the substantial compensation and prestige
3  they obtained as a result thereof.

4    35.    Defendants accomplished their common enterprise and/or common course of conduct
5  by causing the Company to purposefully, recklessly or negligently grant under-priced stock options
6  and to misrepresent its financial results. Because the actions described herein occurred under the
7  authority of the Board of Directors, each of the Defendants was a direct, necessary, and substantial
8  participant in the common enterprise and/or common course of conduct complained of herein.

9    36.    Each of the Defendants aided and abetted and rendered substantial assistance in the
10  wrongs complained of herein. In taking such actions to substantially assist the commission of the
11  wrongdoing complained of herein, each of the Defendants acted with knowledge of the primary
12  wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his or
13  her overall contribution to and furtherance of the wrongdoing.

14                                      **BACKGROUND**

15    37.    Sonic engages in the development and marketing of computer software related to
16  digital media. The Company has three divisions: Professional Products, Roxio, and Advanced
17  Technology. The Professional Products division offers professional-level hardware and software
18  authoring solutions for creating packaged media releases in DVD-Video, DVD-ROM, HD DVD, and
19  BD formats. This division's products include Scenarist Workgroup; SD-series and CineVision video
20  and audio encoders; DVDit, DVDit Pro, and eDVD. This division also provides content
21  development technology, products, and services that enable professional DVD-ROM publishers to
22  create interactivity and seamless Internet connectivity for DVD-Video titles. The Roxio division
23  offers various digital media software application products under the Roxio brand name. This
24  division sells and markets its products through product bundling arrangements with original
25  equipment manufacturer suppliers of related products, as well as through its Web store and in retail
26  channels. The Advanced Technology division develops, licenses, and supplies software and
27  software components under the AuthorScript, CinePlayer and Roxio brand names to PC application
28  and consumer electronics developers. The Company's products are used in creating digital audio

1  and video titles; recording data files; editing video programs; playing DVD, HD DVD, and BD
2  discs; managing digital media on a computer or consumer electronic device file system; editing and
3  adjusting digital photographs and other images; and backing up the information contained on hard
4  disks attached to computers and consumer electronic devices.

5      38.    Throughout the relevant period, Defendants caused Sonic to grant them millions of
6  stock options permitting them to buy Sonic stock for pennies on the dollar which they could in turn
7  sell as the Company's stock price increased. A stock option gives the holder the right to buy a stock
8  at a certain price in the future. Typically, companies set that price at the same time their directors
9  approve an option grant, with an exercise price – also known as the "strike price" – usually set at the
10 closing price of the stock that day, the closing price of the night before or by computing an average
11 of the high and low prices on the day of the vote.

12      39.    However, many of the millions of options granted to Sonic's executives had a hidden,
13 valuable component: they were misdated, often making them even more significantly valuable. The
14 misdated stock option grants fell largely into three categories: (i) "look back" grants, in which the
15 date of the grant was picked retroactively (*e.g.,* a decision in February to pick a January date); (ii)
16 "wait and see" grants, in which a grant date was selected, but the decision was finalized – and
17 sometimes changed – at a later date (*e.g.,* a decision on January 1 to issue a grant on January 15, but
18 there is a period after January 15 in which the grantor waits to see if a more advantageous price
19 occurs and, if one does, uses that later date instead); and (iii) grants where there was a failure to
20 complete the option grant process by the date of the grant (*e.g.,* where there is a decision to issue a
21 grant as of a certain date, but after that date there are changes in the grantees or amounts to grantees,
22 and although the work is not complete on those grants as of the stated grant date, that date is
23 nonetheless used).

24
25
26
27
28

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS        - 13 -

1

## STOCK OPTION GRANTS

2       40.     Certain of Sonic's manipulative stock option grants are described below:

3  **Fiscal 2002[1] Option Grants**

4       41.     Defendants dated many of Sonic's fiscal 2002 option grants to top executives as of
5  July 12, 2001, at $1.12 per share – the low of the month. Within five days, the stock closed at $1.40
6  per share. Defendants Doris, Sauer and Leighton received 90,000, 90,000 and 40,000 options,
7  respectively, at the $1.12 exercise price.

8  **Fiscal 2003 Option Grants**

9       42.     Defendants dated many of Sonic's fiscal 2003 option grants to top executives as of
10  March 11, 2003, at $3.97 per share – the low of the month. Within two weeks, the stock closed
11  above $5.00 per share. Defendant Leighton received 100,000 options at the $3.97 exercise price.
12  Notwithstanding the fact that this purported grant occurred after the enactment of the Sarbanes-
13  Oxley Act of 2002, which requires that all such equity transactions be reported within two days, no
14  Form 4 was timely filed for this purported grant date.

15  **Fiscal 2005 Option Grants**

16       43.     Another post-Sarbanes-Oxley grant to Leighton was made as of May 10, 2004 at
17  $17.49 per share. This grant was made just as Sonic announced an agreement with Microsoft which
18  pushed the price of Sonic stock to above $19 per share within three days and to above $21 per share
19  by the end of May 2004. Defendant Leighton received 100,000 options with the $17.49 exercise
20  price.

21       44.     Below are several of Sonic's grants which occurred right before significant stock
22  price increases:

23

24

25

26

_____

27  [1]     Sonic's fiscal year ends March 31.

28



**SonicSolutions**

April 17, 2001 - October 11, 2001

7/12/01

**SonicSolutions**

August 31, 1001 - March 1, 2002

12/3/01

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**SonicSolutions**
**December 11, 2002 - June 5, 2003**

3/11/03

**SonicSolutions**
**March 26, 2004 - June 23, 2004**

5/10/04

1    45.    Complicating matters and magnifying the harm to Sonic, during the relevant period,
2  Sonic's internal controls and accounting controls with respect to option grants and exercises, and its
3  financial reporting, were grossly inadequate. The weaknesses allowed dates of both grants and
4  exercises to be manipulated and the Company's executive compensation expenses to be materially
5  understated. They also allowed grant dates to be changed to provide executives with more favorably
6  priced options, in effect augmenting their compensation, with no benefit running to the Company.

7    46.    Specifically, in many instances the reported dates Sonic stock options were granted
8  differed from the dates on which the options appear to have been actually granted. The practice
9  applied to the overwhelming majority of stock option grants made during the relevant period, which
10  allowed executives and employees to make more money on their options because it set a lower
11  "strike price" at which the options could be exercised, allowing employees to take larger profits
12  when the stock price later rose. In almost every case of misdating, the price of Sonic shares on the
13  reported option-grant date was lower than the share price on the actual day the options were issued.

14    47.    Through their fiduciary duties of care, good faith and loyalty, Defendants owed to
15  Sonic a duty to ensure that the Company's financial reporting fairly presented, in all material
16  respects, the operations and financial condition of the Company. In order to adequately carry out
17  these duties, it is necessary for the Defendants to know and understand the material non-public
18  information to be either disclosed or omitted from the Company's public statements. This material
19  non-public information included the problems Sonic faced because of its deficient internal controls.
20  Furthermore, Defendants who were members of the Audit Committee during the relevant period had
21  a special duty to know and understand this material information as set out in the Audit Committee's
22  charter, which provides that the Audit Committee is responsible for reviewing, in conjunction with
23  management, the Company's policies generally with respect to the Company's earnings press
24  releases and with respect to financial information and earnings guidance provided to analysts and
25  rating agencies. Defendants, as officers of Sonic during the relevant period, had ample opportunity
26  to discuss this material information with their fellow officers at management meetings and via
27  internal corporate documents and reports. Moreover, the defendants who were directors during the
28  relevant period had ample opportunity to discuss this material information with fellow directors at

1  any of the scores of Board meetings that occurred during the relevant period as well as at committee

2  meetings of the Board. Despite these duties, Defendants negligently, recklessly, and/or intentionally

3  caused or allowed, by their actions or inaction, the misleading statements to be disseminated by

4  Sonic to the investing public and the Company's shareholders during the relevant period.

5      48.    Specifically, since 2001, Defendants caused Sonic to report false and misleading

6  financial results which materially understated its compensation expenses and thus overstated its

7  earnings as follows:

| Fiscal Year | Reported Earnings (Loss) (in Millions) | Reported Diluted Earnings (Loss) Per Share from Continuing Operations |
|---|---|---|
| 2001 | $(5.86) | $(0.47) |
| 2002 | $(4.18) | $(0.25) |
| 2003 | $2.54 | $0.32 |
| 2004 | $11.08 | $0.46 |
| 2005 | $8.54 | $0.76 |
| 2006 | $19.93 | $1.00 |

49.    Moreover, throughout the relevant period certain of the Defendants and former

officers exercised many of these stock options contributing to their ability to sell over $43 million

worth of Sonic stock they obtained often by cashing in under-priced stock options:

| DEFENDANT | DATES OF SALES | SHARES SOLD | PROCEEDS RECEIVED |
|---|---|---|---|
| DORIS | 08/22/02–01/08/07 | 1,031,000 | $17,672,635 |
| LEIGHTON | 03/02/00–08/25/05 | 341,000 | $5,240,870 |
| SAUER | 08/22/02–01/08/07 | 1,031,000 | $17,672,635 |
| ELY | 09/05/06 | 28,071 | $428,083 |
| GREBER | 02/22/00–09/07/05 | 87,500 | $1,128,765 |
| MARGUGLIO | 08/22/03–08/28/03 | 20,000 | $254,630 |
| LANGLEY | 08/04/03–09/06/05 | 38,000 | $696,462 |
| TOTAL | | 2,576,571 | $43,094,080 |

50.    On February 1, 2007, Sonic announced that it had initiated an internal review of its

historical stock option grant practices, stating in part:

> Sonic Solutions, the world leader in digital media software, announced today that it has commenced a voluntary review of its historical and current stock option grant practices and related accounting. The review was initiated by management and is being conducted by the audit committee of the board of directors, comprised solely of independent directors, with the assistance of independent legal counsel. The audit committee and Company management have been discussing this ongoing review with the Company's independent auditors and have voluntarily informed the Securities and Exchange Commission of the review.

1

2

3

4

Based on the review to date, the audit committee and Company management have preliminarily concluded that, under applicable accounting guidance, the Company lacks sufficient documentation for certain historical option grants and that the measurement dates associated with these option grants may need to be adjusted. Based also on this review, the Company believes that its current options granting practices are generally acceptable and meet relevant standards for properly documenting grant dates.

5

6

7

8

9

10

11

12

The audit committee continues to analyze the impact of this issue, but believes it will result in significant non-cash charges. These charges will principally affect prior fiscal years, and the Company believes that the accounting adjustments will not have any impact on previously reported cash positions or revenues. The Company has not yet determined the amount or materiality of any such non-cash charges, any resulting cash charges associated with tax issues, or accounting or other consequences. Although the timeframe for completing the review is uncertain, the Company continues to be focused on completing this review in a timely manner. Based on the preliminary conclusions of the review, the audit committee and management believe that the Company will need to restate its previously issued financial statements in order to record additional non-cash charges for stock-based compensation expense. However, given that the audit committee review is still ongoing, the audit committee has not yet determined which years or periods will need to be restated.

13

14

15

16

17

18

19

20

51.    In effect, during the relevant period, the Defendants caused Sonic's shares to trade at artificially inflated levels by issuing a series of materially false and misleading statements regarding the Company's financial statements, business and prospects. Specifically, Defendants caused or allowed Sonic to issue statements that failed to disclose or misstated the following: (i) that the Company had problems with its internal controls that prevented it from issuing accurate financial reports and projections; (ii) that because of improperly recorded stock-based compensation expenses the Company's financial results violated GAAP; and (iii) that the Company's public disclosures presented an inflated view of Sonic's earnings and earnings per share.

21

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

22

23

24

25

26

27

52.    Plaintiff brings this action derivatively in the right and for the benefit of Sonic to redress injuries suffered and to be suffered by Sonic as a direct result of Defendants' violations of state and federal law, breaches of fiduciary duty, abuse of control, constructive fraud, gross mismanagement, corporate waste and unjust enrichment, as well as the aiding and abetting thereof, by the Defendants. This is not a collusive action to confer jurisdiction on this Court which it would not otherwise have.

28

1    53.    Plaintiff will adequately and fairly represent the interests of Sonic and its
2    shareholders in enforcing and prosecuting its rights.

3    54.    Plaintiff is an owner of Sonic stock and was an owner of Sonic stock during times
4    relevant to Defendants' illegal and wrongful course of conduct alleged herein.

5    55.    Based upon the facts set forth throughout this Complaint, a pre-filing demand upon
6    the Sonic Board of Directors to institute this action against the officers and members of the Sonic
7    Board of Directors is excused as futile. A pre-filing demand would be a useless and futile act
8    because:

9            (a)    The members of Sonic's Board have demonstrated their unwillingness and/or
10    inability to act in compliance with their fiduciary obligations and/or to sue themselves and/or their
11    fellow directors and allies in the top ranks of the corporation for the violations of law complained of
12    herein. These are people they have developed professional relationships with, who are their friends
13    and with whom they have entangling financial alliances, interests and dependencies, and therefore,
14    they are not able to and will not vigorously prosecute any such action.

15            (b)    The Sonic Board of Directors and senior management participated in,
16    approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to
17    conceal or disguise those wrongs from Sonic's stockholders or recklessly and/or negligently
18    disregarded the wrongs complained of herein, and are therefore not disinterested parties. As a result
19    of their access to and review of internal corporate documents, conversations and connections with
20    other corporate officers, employees, and directors, and attendance at management and/or Board
21    meetings, each of the Defendants knew the adverse non-public information regarding the improper
22    stock option grants and financial reporting. Pursuant to their specific duties as Board members,
23    Defendants are charged with the management of the Company and to conduct its business affairs.
24    Defendants breached the fiduciary duties that they owed to Sonic in that they failed to prevent and
25    correct the improper stock option granting and financial reporting. Certain directors are also
26    dominated and controlled by other Defendants and cannot act independently of them. Thus, the
27    Sonic Board cannot exercise independent objective judgment in deciding whether to bring this action

28

1  or whether to vigorously prosecute this action because each of its members participated personally in
2  the wrongdoing or are dependent upon other Defendants who did.

3          (c)     The acts complained of constitute violations of the fiduciary duties owed by
4  Sonic's officers and directors and these acts are incapable of ratification.

5          (d)     The members of Sonic's Board have benefited, and will continue to benefit,
6  from the wrongdoing herein alleged and have engaged in such conduct to preserve their positions of
7  control and the perquisites derived thereof, and are incapable of exercising independent objective
8  judgment in deciding whether to bring this action.

9          (e)     Any suit by the current directors of Sonic to remedy these wrongs would
10 likely further expose the liability of Defendants under the federal securities laws, which could result
11 in civil and/or criminal actions being filed against one or more of the Defendants, thus, they are
12 hopelessly conflicted in making any supposedly independent determination on whether to sue
13 themselves.

14          (f)     Sonic has been and will continue to be exposed to significant losses due to the
15 wrongdoing complained of herein, yet Sonic's Board has not filed any lawsuits against Defendants
16 or others who were responsible for that wrongful conduct to attempt to recover for Sonic any part of
17 the damages Sonic suffered and will suffer thereby.

18          (g)     In order to properly prosecute this lawsuit, Sonic's directors would have to sue
19 themselves and the other Defendants, requiring them to expose themselves and their comrades to
20 millions of dollars in civil liability and/or sanctions. This they will not do.

21          (h)     Sonic's current and past officers and directors are protected against personal
22 liability for their acts of mismanagement, waste and breach of fiduciary duty alleged in this
23 Complaint by directors' and officers' liability insurance which they caused the Company to purchase
24 for their protection with corporate funds, *i.e.,* monies belonging to the stockholders of Sonic.
25 However, due to certain changes in the language of directors' and officers' liability insurance
26 policies in the past few years, the directors' and officers' liability insurance policies covering the
27 Defendants in this case contain provisions which eliminate coverage for any action brought directly
28 by Sonic against these Defendants, known as, *inter alia*, the "insured versus insured exclusion." As

1  a result, if these directors were to sue themselves or certain of the officers of Sonic, there would be

2  no directors' and officers' insurance protection and thus, this is a further reason why they will not

3  bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such

4  insurance coverage exists and will provide a basis for the Company to effectuate a recovery.

5          (i)      To bring this action for breaching their fiduciary duties, the members of the

6  Sonic Board would have been required to sue themselves and/or their fellow directors and allies in

7  the top ranks of the Company, who are their personal friends and with whom they have entangling

8  financial alliances, interests and dependencies, which they would not do.

9       56.    Plaintiff has not made any demand on shareholders of Sonic to institute this action

10  since such demand would be a futile and useless act for the following reasons:

11          (a)     Sonic is a publicly traded company with approximately 26 million shares

12  outstanding, and thousands of shareholders;

13          (b)    Making demand on such a number of shareholders would be impossible for

14  plaintiff who has no way of finding out the names, addresses or phone numbers of shareholders; and

15          (c)     Making demand on all shareholders would force plaintiff to incur huge

16  expenses, assuming all shareholders could be individually identified.

17  **THE STOCK OPTION BACKDATING SCHEME AND ITS**<br>**IMPACT ON SONIC'S FINANCIAL STATEMENTS**

18  **The Fiscal 2000 Form 10-K**

19

20       57.    On or about June 28, 2000, the Company filed its fiscal 2000 Form 10-K with the

21  SEC. The fiscal 2000 Form 10-K was simultaneously distributed to shareholders and the public.

22  The fiscal 2000 Form 10-K included Sonic's 2000 financial statements which were materially false

23  and misleading and presented in violation of GAAP, due to improper accounting for the backdated

24  stock options. As a result, Sonic's compensation expense was understated and its net earnings were

25  overstated.

26  **The Fiscal 2001 Form 10-K**

27       58.    On or about June 27, 2001, the Company filed its fiscal 2001 Form 10-K with the

28  SEC. The fiscal 2001 Form 10-K was simultaneously distributed to shareholders and the public.

1    The fiscal 2001 Form 10-K included Sonic's 2001 financial statements which were materially false
2    and misleading and presented in violation of GAAP, due to its improper accounting for the
3    backdated stock options. As a result, Sonic's compensation expense was understated and its net
4    earnings were overstated.

5    **The Fiscal 2002 Form 10-K**

6        59.    On or about June 28, 2002, the Company filed its fiscal 2002 Form 10-K with the
7    SEC. The fiscal 2002 Form 10-K was simultaneously distributed to shareholders and the public.
8    The fiscal 2002 Form 10-K included Sonic's 2002 financial statements which were materially false
9    and misleading and presented in violation of GAAP, due to its improper accounting for the
10    backdated stock options. As a result, Sonic's compensation expense was understated and its net
11    earnings were overstated.

12    **The Fiscal 2003 Form 10-K**

13        60.    On or about June 26, 2003, the Company filed its fiscal 2003 Form 10-K with the
14    SEC. The fiscal 2003 Form 10-K was simultaneously distributed to shareholders and the public.
15    The fiscal 2003 Form 10-K included Sonic's 2003 financial statements which were materially false
16    and misleading and presented in violation of GAAP, due to improper accounting for the backdated
17    stock options. As a result, Sonic's compensation expense was understated and its net earnings were
18    overstated.

19    **The Fiscal 2004 Form 10-K**

20        61.    On or about June 14, 2004, the Company filed its fiscal 2004 Form 10-K with the
21    SEC. The fiscal 2004 Form 10-K was simultaneously distributed to shareholders and the public.
22    The fiscal 2004 Form 10-K included Sonic's 2004 financial statements which were materially false
23    and misleading and presented in violation of GAAP, due to improper accounting for the backdated
24    stock options. As a result, Sonic's compensation expense was understated and its net earnings were
25    overstated.

26    **The Fiscal 2005 Form 10-K**

27        62.    On or about June 29, 2005, the Company filed its fiscal 2005 Form 10-K with the
28    SEC. The fiscal 2005 Form 10-K was simultaneously distributed to shareholders and the public.

1  The fiscal 2005 Form 10-K included Sonic's 2005 financial statements which were materially false
2  and misleading and presented in violation of GAAP, due to its improper accounting for the
3  backdated stock options. As a result, Sonic's compensation expense was understated and its net
4  earnings were overstated.

5  **The Fiscal 2006 Form 10-K**

6      63.    On or about June 14, 2006, the Company filed its fiscal 2006 Form 10-K with the
7  SEC. The fiscal 2006 Form 10-K was simultaneously distributed to shareholders and the public.
8  The fiscal 2006 Form 10-K included Sonic's 2006 financial statements which were materially false
9  and misleading and presented in violation of GAAP, due to its improper accounting for the
10  backdated stock options. As a result, Sonic's compensation expense was understated and its net
11  earnings were overstated.

12                              **DEFENDANTS' SCHEME BEGINS TO UNRAVEL**

13      64.    The 2001-2005 Proxy Statements concealed Defendants' option backdating scheme.
14  Thus, the Company's shareholders remained unaware of Defendants' wrongdoing when voting on
15  proxy proposals between 2001 and 2005. In fact, it was not until early February 2007 that
16  shareholders learned that the Proxy Statements which they had relied upon for years were false and
17  misleading. Defendants have been unjustly enriched at the expense of Sonic, which has received and
18  will receive less money from the Defendants when they exercise their options at prices substantially
19  lower than they would have if the options had not been backdated. Each dollar diverted to
20  Defendants via the option backdating scheme has come at the expense of the Company.

21                              **THE ADVERSE IMPACT OF DEFENDANTS' MISCONDUCT**

22      65.    Unlike most companies which avoid such option backdating abuse by issuing stock
23  option grants at the same time each year, which eliminates the potential for backdating, Defendants
24  ensured that executives would not have any such restrictions. Given the many times Sonic's grants
25  were the low of the month in which options were granted, the date of their stock option grants was
26  clearly more than merely coincidental.

27      66.    As a result of the backdating of options, Defendants have been unjustly enriched at
28  the expense of Sonic, which has received and will receive less money from Defendants when they

1  exercise their options at prices substantially lower than they would have if the options had not been

2  backdated.

3                    **TOLLING OF THE STATUTE OF LIMITATIONS**

4          67.      The Counts alleged herein are timely. As an initial matter, Defendants wrongfully

5  concealed their manipulation of the stock option plans, through strategic timing and fraudulent

6  backdating, by issuing false and misleading Proxy Statements, by falsely reassuring Sonic's public

7  investors that Sonic's option grants were being administered by a committee of independent

8  directors, and by failing to disclose that backdated options were, in fact, actually issued on dates

9  other than those disclosed, and that strategically timed option grants were issued based on the

10  manipulation of insider information that ensured that the true fair market value of the Company's

11  stock was, in fact, higher than the publicly traded price on the date of the option grant.

12          68.      Sonic's public investors had no reason to know of the Defendants' breaches of their

13  fiduciary duties until February 1, 2007, when Sonic announced that it was initiating a review of its

14  purported improprieties in the issuance of stock options, stating in part:

15          Sonic Solutions, the world leader in digital media software, announced today that it
            has commenced a voluntary review of its historical and current stock option grant
16          practices and related accounting. The review was initiated by management and is
            being conducted by the audit committee of the board of directors, comprised solely
17          of independent directors, with the assistance of independent legal counsel. The audit
            committee and Company management have been discussing this ongoing review
18          with the Company's independent auditors and have voluntarily informed the
            Securities and Exchange Commission of the review.

19
            Based on the review to date, the audit committee and Company management
20          have preliminarily concluded that, under applicable accounting guidance, the
            Company lacks sufficient documentation for certain historical option grants and that
21          the measurement dates associated with these option grants may need to be adjusted.
            Based also on this review, the Company believes that its current options granting
22          practices are generally acceptable and meet relevant standards for properly
            documenting grant dates.

23
            The audit committee continues to analyze the impact of this issue, but
24          believes it will result in significant non-cash charges. These charges will principally
            affect prior fiscal years, and the Company believes that the accounting adjustments
25          will not have any impact on previously reported cash positions or revenues. The
            Company has not yet determined the amount or materiality of any such non-cash
26          charges, any resulting cash charges associated with tax issues, or accounting or other
            consequences. Although the timeframe for completing the review is uncertain, the
27          Company continues to be focused on completing this review in a timely manner.
            Based on the preliminary conclusions of the review, the audit committee and
28          management believe that the Company will need to restate its previously issued

1   financial statements in order to record additional non-cash charges for stock-based
2   compensation expense. However, given that the audit committee review is still
    ongoing, the audit committee has not yet determined which years or periods will
    need to be restated.

3

4   69.    Finally, as fiduciaries of Sonic and its public shareholders, the Defendants cannot rely

5   on any limitations defense where they withheld from Sonic's public shareholders the facts that give

6   rise to the claims asserted herein, *i.e.,* that the Sonic Board had abdicated its fiduciary

7   responsibilities to oversee the Company's executive compensation practices, and that the option

    grant dates had been manipulated to maximize the profit for the grant recipients and, accordingly, to

8   maximize the costs for the Company.

9
                                    **COUNT I**
10
                    **Violations of §14(a) of the Exchange Act**
11                          **Against All Defendants**

12   70.    Plaintiff incorporates by reference and realleges each and every allegation set forth

13   above, as though fully set forth herein.

14   71.    Rule 14a-9, promulgated pursuant to §14(a) of the Exchange Act, provides that no

15   proxy statement shall contain "any statement which, at the time and in the light of the circumstances

16   under which it is made, is false or misleading with respect to any material fact, or which omits to

17   state any material fact necessary in order to make the statements therein not false or misleading." 17

18   C.F.R. §240.14a-9.

19   72.    The 2001-2005 Proxy Statements violated §14(a) and Rule 14a-9 because they

20   omitted material facts, including the fact that Defendants were causing Sonic to engage in an option

21   backdating scheme, a fact which Defendants were aware of and participated in from at least 2001.

22   73.    In the exercise of reasonable care, Defendants should have known that the Proxy

23   Statements were materially false and misleading.

24   74.    The misrepresentations and omissions in the Proxy Statements were material to

25   plaintiff in voting on each Proxy Statement. The Proxy Statements were an essential link in the

26   accomplishment of the continuation of Defendants' unlawful stock option backdating scheme, as

27   revelations of the truth would have immediately thwarted a continuation of shareholders'

28

1 | endorsement of the directors' positions, the executive officers' compensation and the Company's
2 | compensation policies.

3 |     75.    The Company was damaged as a result of the material misrepresentations and
4 | omissions in the Proxy Statements.

5 | **COUNT II**

6 | **Accounting**

7 |     76.    Plaintiff incorporates by reference and realleges each and every allegation set forth
8 | above, as though fully set forth herein.

9 |     77.    At all relevant times, Defendants, as directors and/or officers of Sonic, owed the
10 | Company and its shareholders fiduciary duties of good faith, care, candor and loyalty.

11 |     78.    In breach of their fiduciary duties owed to Sonic and its shareholders, the Defendants
12 | caused Sonic, among other things, to grant backdated stock options to themselves and/or certain
13 | other officers and directors of Sonic.  By this wrongdoing, the Defendants breached their fiduciary
14 | duties owed to Sonic and its shareholders.

15 |     79.    The Defendants possess complete and unfettered control over their improperly issued
16 | stock option grants and the books and records of the Company concerning the details of such
17 | improperly backdated stock option grants to the Defendants.

18 |     80.    As a result of Defendants' misconduct, Sonic has been substantially injured and
19 | damaged financially and is entitled to a recovery as a result thereof, including the proceeds of those
20 | improperly granted options which have been exercised and sold.

21 |     81.    Plaintiff demands an accounting be made of all stock option grants made to
22 | Defendants, including, without limitation, the dates of the grants, the amounts of the grants, the
23 | value of the grants, the recipients of the grants, the exercise date of stock options granted to the
24 | Defendants, as well as the disposition of any proceeds received by the Defendants via sale or other
25 | exercise of backdated stock option grants received by the Defendants.

26
27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## COUNT III

### Breach of Fiduciary Duty and/or Aiding and Abetting
### Against All Defendants

82.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

83.     Defendants agreed to and did participate with defendants Doris and Sauer and the other Defendants and/or aided and abetted one another in a deliberate course of action designed to divert corporate assets in breach of the fiduciary duties the Defendants owed to the Company.

84.     The Defendants have violated fiduciary duties of care, loyalty, candor and independence owed to Sonic and its public shareholders, have engaged in unlawful self-dealing and have acted to put their personal interests and/or their colleagues' interests ahead of the interests of Sonic and its shareholders.

85.     As demonstrated by the allegations above, Defendants failed to exercise the care required, and breached their duties of loyalty, good faith, candor and independence owed to Sonic and its public shareholders, and they failed to disclose material information and/or made material misrepresentations to shareholders regarding Defendants' option backdating scheme.

86.     By reason of the foregoing acts, practices and course of conduct, the Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward Sonic and its public shareholders.

87.     As a proximate result of Defendants' conduct, in concert with Doris and Sauer and other insiders, Sonic has been injured and is entitled to damages.

## COUNT IV

### Abuse of Control Against All Defendants

88.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

89.     The Defendants employed the alleged scheme for the purpose of maintaining and entrenching themselves in their positions of power, prestige and profit at, and control over, Sonic, and to continue to receive the substantial benefits, salaries and emoluments associated with their

1 | positions at Sonic. As a part of this scheme, Defendants actively made and/or participated in the
2 | making of, or aided and abetted the making of, misrepresentations regarding Sonic.

3 |      90.    Defendants' conduct constituted an abuse of their ability to control and influence
4 | Sonic.

5 |      91.    By reason of the foregoing, Sonic has been damaged.

6 | **COUNT V**

7 | **Gross Mismanagement Against All Defendants**

8 |      92.    Plaintiff incorporates by reference and realleges each and every allegation set forth
9 | above, as though fully set forth herein.

10 |      93.    Defendants had a duty to Sonic and its shareholders to prudently supervise, manage
11 | and control the operations, business and internal financial accounting and disclosure controls of
12 | Sonic.

13 |      94.    Defendants, by their actions and by engaging in the wrongdoing described herein,
14 | abandoned and abdicated their responsibilities and duties with regard to prudently managing the
15 | businesses of Sonic in a manner consistent with the duties imposed upon them by law. By
16 | committing the misconduct alleged herein, Defendants breached their duties of due care, diligence
17 | and candor in the management and administration of Sonic's affairs and in the use and preservation
18 | of Sonic's assets.

19 |      95.    During the course of the discharge of their duties, Defendants knew or recklessly
20 | disregarded the unreasonable risks and losses associated with their misconduct, yet Defendants
21 | caused Sonic to engage in the scheme complained of herein which they knew had an unreasonable
22 | risk of damage to Sonic, thus breaching their duties to the Company. As a result, Defendants grossly
23 | mismanaged Sonic.

24 |      96.    By reason of the foregoing, Sonic has been damaged.

25 | **COUNT VI**

26 | **Constructive Fraud Against All Defendants**

27 |      97.    Plaintiff incorporates by reference and realleges each and every allegation set forth
28 | above, as though fully set forth herein.

1    98.    As corporate fiduciaries, Defendants owed to Sonic and its shareholders a duty of
2  candor and full accurate disclosure regarding the true state of Sonic's business and assets and their
3  conduct with regard thereto.

4    99.    As a result of the conduct complained of, Defendants made, or aided and abetted the
5  making of, numerous misrepresentations to and/or concealed material facts from Sonic's
6  shareholders despite their duties to, *inter alia*, disclose the true facts regarding their stewardship of
7  Sonic. Thus they have committed constructive fraud and violated their duty of candor.

8    100.    By reason of the foregoing, Sonic has been damaged.

9                                          **COUNT VII**

10                          **Corporate Waste Against All Defendants**

11    101.    Plaintiff incorporates by reference and realleges each and every allegation set forth
12  above, as though fully set forth herein.

13    102.    By failing to properly consider the interests of the Company and its public
14  shareholders, by failing to conduct proper supervision, by giving away millions of dollars to
15  Defendants via the option backdating scheme, Defendants have caused Sonic to waste valuable
16  corporate assets.

17    103.    As a result of Defendants' corporate waste, they are liable to the Company.

18                                         **COUNT VIII**

19                          **Unjust Enrichment Against All Defendants**

20    104.    Plaintiff incorporates by reference and realleges each and every allegation set forth
21  above, as though fully set forth herein.

22    105.    As a result of the conduct described above, Defendants will be and have been unjustly
23  enriched at the expense of Sonic, in the form of unjustified salaries, benefits, bonuses, stock option
24  grants and other emoluments of office.

25    106.    All the payments and benefits provided to the Defendants were at the expense of
26  Sonic. The Company received no benefit from these payments. Sonic was damaged by such
27  payments.

28

1     107.    Certain of the Defendants sold Sonic stock for a profit during the period of deception,

2   misusing confidential non-public corporate information.  These Defendants should be required to

3   disgorge the gains which they have and/or will otherwise unjustly obtain at the expense of Sonic.  A

4   constructive trust for the benefit of the Company should be imposed thereon.

5                                          **COUNT IX**

6                       **Against the Officer Defendants for Rescission**

7     108.    Plaintiff incorporates by reference and realleges each and every allegation contained

8   above as though fully set forth herein.

9     109.    As a result of the acts alleged herein, the stock option contracts between the Officer

10   Defendants and Sonic entered into during the relevant period were obtained through Defendants'

11   fraud, deceit, and abuse of control.  Further, the backdated stock options were illegal grants and thus

12   invalid as they were not authorized in accordance with the terms of the publicly filed contracts

13   regarding the Officer Defendants' employment agreements and the Company's stock option plan

14   which was also approved by Sonic shareholders and filed with the SEC.

15     110.    All contracts which provide for stock option grants between the Officer Defendants

16   and Sonic and were entered into during the relevant period should, therefore, be rescinded, with all

17   sums paid under such contracts returned to the Company, and all such executory contracts cancelled

18   and declared void.

19                                      **PRAYER FOR RELIEF**

20     WHEREFORE, plaintiff demands judgment as follows:

21     A.      Awarding money damages against all Defendants, jointly and severally, for all losses

22   and damages suffered as a result of the acts and transactions complained of herein, together with pre-

23   judgment interest, to ensure Defendants do not participate therein or benefit thereby;

24     B.      Directing all Defendants to account for all damages caused by them and all profits

25   and special benefits and unjust enrichment they have obtained as a result of their unlawful conduct,

26   including all salaries, bonuses, fees, stock awards, options and common stock sale proceeds and

27   imposing a constructive trust thereon;

28

1    C.    Directing Sonic to take all necessary actions to reform and improve its corporate
2  governance and internal control procedures to comply with applicable law, including, but not limited
3  to, putting forward for a shareholder vote resolutions for amendments to the Company's By-Laws or
4  Articles of Incorporation and taking such other action as may be necessary to place before
5  shareholders for a vote adoption of the following Corporate Governance policies:

6        (i)    a proposal requiring that the office of CEO of Sonic and Chairman of the
7  Sonic Board of Directors be permanently held by separate individuals and that the Chairman of the
8  Sonic Board meets rigorous "independent" standards;

9        (ii)    a proposal to strengthen the Sonic Board's supervision of operations and
10  develop and implement procedures for greater shareholder input into the policies and guidelines of
11  the Board;

12        (iii)    appropriately test and then strengthen the internal audit and control functions;

13        (iv)    rotate independent auditing firms every five years;

14        (v)    control and limit insider stock selling and the terms and timing of stock option
15  grants; and

16        (vi)    reform executive compensation.

17    D.    Ordering the imposition of a constructive trust over Defendants' stock options and
18  any proceeds derived therefrom;

19    E.    Awarding punitive damages;

20    F.    As to all improperly dated and/or improperly priced options that have been exercised,
21  ordering Defendants to make a payment to the Company in an amount equal to the difference
22  between the prices at which the options were exercised and the exercise prices the options should
23  have carried if they were priced at fair market value on the actual date of grant;

24    G.    As to all improperly dated and/or improperly priced options that have been granted
25  but not yet exercised or expired, ordering the Company to rescind such options so they carry the
26  exercise prices they should have carried if they were priced at fair market value on the actual date of
27  grant;

28

1      H.    Awarding costs and disbursements of this action, including reasonable attorneys',

2  accountants', and experts' fees; and

3      I.    Granting such other and further relief as this Court may deem just and proper.

4  **JURY DEMAND**

5      Plaintiff demands a trial by jury.

6  DATED: June 26, 2007

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
7  JOHN K. GRANT
SHAWN A. WILLIAMS
8  MONIQUE C. WINKLER
AELISH M. BAIG

9

10

11              SHAWN A. WILLIAMS

12  100 Pine Street, Suite 2600
San Francisco, CA 94111
13  Telephone: 415/288-4545
415/288-4534 (fax)

14
LERACH COUGHLIN STOIA GELLER
15    RUDMAN & ROBBINS LLP
TRAVIS E. DOWNS III
16  KATHLEEN A. HERKENHOFF
BENNY C. GOODMAN III
17  MARY LYNNE CALKINS
655 West Broadway, Suite 1900
18  San Diego, CA 92101
Telephone: 619/231-1058
19  619/231-7423 (fax)

20  LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
21  THOMAS G. WILHELM
9601 Wilshire Blvd., Suite 510
22  Los Angeles, CA 90210
Telephone: 310/859-3100
23  310/278-2148 (fax)

24  THE WEISER LAW FIRM, P.C.
ROBERT B. WEISER
25  121 N. Wayne Avenue, Suite 100
Wayne, PA 19087
26  Telephone: 610/225-2677
610/225-2678 (fax)

27
Attorneys for Plaintiff
28  S:\CasesSD\Sonic Solutions Derivative\Cpt Sonic_Doolittle.doc

1          **CERTIFICATION OF INTERESTED ENTITIES OR PERSONS**

2          Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the

3    named parties, there is no such interest to report.

4

5

6                                    ATTORNEY OF RECORD FOR PLAINTIFF
                                     SAMMY K. DOOLITTLE
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## SONIC SOLUTIONS CORP. VERIFICATION

I,Sammy K. Doolittle , hereby verify that I am familiar with the allegations in the

Complaint, and that I have authorized the filing of the Complaint, and that the foregoing is true

and correct to the best of my knowledge, information and belief.

DATE: $\underline{03-06-07}$    $\underline{\text{Sammy } \text{K Doolittle}}$
SIGNATURE